Johnson, C J. This was a suit instituted on the chanceiy side of the Circuit Court of Crittenden county, by Thomas Collins, in right of his wife, Yirginia, and also as guardian of the minor children of William Hulbert, deceased. The bill charges that William Hulbert, senior, some time in the month of Decembei*, 1835, died intestate in said county of Crittenden, leaving a considerable estate both real and personal; that he left Frances Hulbert his widow, who has since intermarried with one William D. Ferguson: that the said William Hulbert, senior, left the following named children his heirs and distri-butees, to wit: Yirginia W., who in the year 1838, intermarried with the said Thomas M. Collins, and also Henry T., William R., Russell J. W., and George W., who were all minors. It further charges that shortly after the death of the said William Hulbert, his said widow was appointed administratrix of his estate, and also guardian of said minor children, including the said Yirginia W. It further charges that shortly after the marriage of the widow with said Ferguson, he, the said Ferguson, was appointed administrator de bonis non of the estate of said William Hulbert, deceased, and that said Collins was appointed guardian of said minor children, and further that the said Frances, whilst acting in the treble capacity of doweress, administra-trix and guardian, wholly failed to make any legal settlement of the affairs of the estate within the time required by law, or at any time whatever, and that the same illegal course has been pursued by her said husband since his said appointment. That instead of pursuing the course prescribed by law, the said administratrix undertook to keep the whole property belonging to the estate, carrying on a farm and wood-yard, using the labor of the negroes, and committing waste by cutting the most valuable timber on the land of the deceased; that during all that time the said administratrix rendered no account whatever of the profits arising from the estate, but never failed to charge the estate with every item of expense incurred in conducting the said farm and wood-yard, including her own individual, and, in many instances, extravagant expenditures, and that the said Ferguson also pursued a similar course after his said appointment. It further charges that during the administration and guardianship of the said Frances, as well as during the administration of the said Ferguson, many and divers frauds, negligencias, mismanagements and illegal practices were permitted, done and perpetrated by the said administrator and administratrix, thereby causing injury, diminution and destruction to the estate, and resulting in their great loss and detriment. The complainants then proceeded to set out their grievances specifically; First, that the said William and Frances are chargeable with gross fraud and negligence in failing and refusing to make the regular settlements required by law; Second, that at the time of the death of William Hulbert diere were twenty-four negroes belonging to the estate which came into the possession of the said Frances, as guardian and admin-istratrix, sixteen of whom were good able-bodied working hands at that timé, and that several others, since, haye become able to do good service, but that no account whatever had been rendered of die products of the labor of said negroes, and drat the administrator then refused to allow any thing but the most inconsiderable and insufficient amount for their hire. Thirdly, that they had caused large quantities of valuable timber to be cut upon the land and sold without any account having been taken of the same. Fourthly, that one of the negroes belonging to the estate, named Alfred, had been sold by the administratrix,-¡without any legal authority, and that two others, as the complainants believed, had been negligently suffered to die for the want of medical aid. Fifthly, that they had suffered their accounts, such as they were, to get into the utmost confusion and intricacy, the administratrix never having kept separate accounts of her guardianship and administration, and as an evidence of the alleged confusion they charge that they have discovered the grossest ercors in some of the accounts allowed by the Probate Court, that in one instance a payment of more than eleven hundred dollars made by William Hul-bert in his life-time had actually been credited to the administratrix, and that in another instance a charge of near four hundred dollars had been twice made and twice credited against the estate, besides many other errors of a similar nature. Sixthly, that while no regular settlements had ever been made in the Probate Court, many accounts had nevertheless been formally presented and allowed, and that many of said accounts were grossly erroneous and extravagant] but that notwithstanding such errors and extravagance the administrator resisted the re-examination of said allowances under the pretext that an appeal ought to have been immediately taken from each of them, when in truth there was no separate individual representing the interest of die complainants, and that under such circumstances they charge that the said allowances were fraudulently obtained and are impeachable in a court of chancery. They further charge that the administratrix has been guilty of culpable negligence in refusing to fulfil an advantageous contract entered into by the intestate with one Joseph Thompson, by which neglect the interest of the estate and of the complainants had materially suffered. Eighthly, that the administrator claims a most extravagant allowance for keeping, clothing and feeding the negro children, and that in some instances had made heavy charges of that kind, when the negroes who are the subjects of such charges would have hired for a considerable amount, and that a charge has been made againstthemselves for five months’ board when they were actually living with an uncle who made no charge against them. Ninthly, that said administrator refused to pay any rent for the land which has been used by his said wife from the time of her said husband’s (Hulbert’s) death, alleging that no rent could be legally exacted until her dower should be laid off by the guardian. And, tenthly, that the said administrator has taken advantage of his fi-ducial character to get possession of the intestate’s lands, and that he now sets up a claim to them in his own right, a claim which, it is believed, never was intimated until said Ferguson obtained possession of all the documénts relating to the estate in question. The complainants insist that as the said administratrix chose to cany on the farm and wood-yard, using the land and negroes of the estate, it was an experiment made upon her own responsibility, and at her own risk; but that the advantages, if any accrued, were to be shared in full proportion by themselves, and that therefore they are entitled to claim their proportion of the proceeds of the said farm and wood-yard, or their proportion of such amount as a prudent administrator might have realized from the hire of the slaves, the rent of the land and the sale of the wood, according as the one or the other should be found to be most to their advantage. They also insist that the administrator is chargeable with the highest legal rate of interest, the best hire that could have been obtained for the slaves, the highest rent for the land and the full value of all the wood destroyed or sold; and they further insist that they are not responsible for any of the personal expenses of the said William D. Ferguson and his wife Frances during any period of their respective administrations. Upon this state of facts they pray that the said William D. Ferguson and Frances his wife, may render a full, true and perfect account of their management of the estate of said William Hulbert, deceased, with the profits and proceeds thereof during their respective administrations, that they may separately and distinctly state the proñts and proceeds actually realized from the said farm and wood-yard since the death of the said William Hulbert, as well as the yearly value of the rent of the land and the hire of each and every negro, also, that they exhibit a full, rue and perfect account of the guardianship of the said Frances, for each and every one of her said wards; and also that they may answer upon their respective corporeal oaths, all and singular the statements and charges in said bill made, in as full and ample a manner as though the same were thereinafter separately and distinctly repeated and they particularly interrogated thereto; and especially that they may explain fully and particularly each and every item of their respective accounts as administrators and guardians, that the said William D. Ferguson may also answer and say what part of the land usually supposed to belong to said Hulbert’s estate he now claims, and what is the nature of said claims, to the end that a final and complete settlement and distribution of the estate of the said William* Hulbert, deceased, may be made, that the said William D. Ferguson may be ordered to pay over to said Thomas M. Collins, in right of his said wife and as the guardian of the said minor children, the amount that may be justly due them by the said William D. Ferguson and Frances his wife, and also that they may have general relief. They conclude with a prayer for the State’s most gracious writ of subpoena, <fcc. It is deemed unnecessary to enter into a particular and detailed statement of all the facts and matters set up in the answers of the defendants or presented by the testimony of the witnesses adduced before the master, as the exceptions taken to the report of that officér will necessarily bring the whole in review before this court. It is believed that the several exceptions taken to the report raise every material point involved in the cause. William D. Ferguson, one of the defendants in the court below, objected to the master’s report upon the ground that after he had been notified of the time and place of taking said account, he had caused a subpoena to be issued by the master to the sheriff of Mississippi county, to procure the attendance-before him of one John W. Whetworth, and one Andrew J, Black-more, both of whom were material witnesses for him, and that the first of whom, during the time tire negroes belonging to said estate, were laboring, as set forth in his answer, had resided in the immediate neighborhood of said negroes, and had an intimate knowledge of the value of them, and that though they had been duly served with said subpoena, they had refused to attend, and that tire said master feeling it to be his duty to proceed with said examination without said witnesses, did so proceed and thus wholly deprived him of the benefit, of their testimony. The truth of this exception does not appear from the report of the master as submitted to the court. There is-nothing in the proceedings of that officer going to show that the witnesses referred to in the affidavit were ever summoned before him,, or that upon the return of such process the defendant either asked for an extension of time in order to take their depositions, or a compulsory process by which to compel their personal attendance. The first mention that is made of it is upon the submission of the report for confirmation by the Circuit Court, and then it is that a continuance of the cause is claimed in order to afford an opportunity to procure the testimony of the witnesses specified in die affidavit. We consider it clear, that at that stage of the cause, the Circuit Court was fully warranted in refusing the motion for a continuance. The second ground of exception is that the evidence upon which the report was founded was entirely insufficient to warrant the conclusion drawn therefrom. This is an objection to the report in general terms, and consequently will not be now examined, and more especially as there are other exceptions pointing out the particular instances in which the master erred in stating the account. The third exception is, that the master has wholly failed to allow the administrator the commission prescribed by law, or indeed any compensation whatever. This point it is unnecessary to discuss here, as the Circuit Court very properly corrected the error of the master and gave the administrator credit for his lawful commissions. The fourth exception is based upon the ground that the master had not reported the objections raised by him to the competency, sufficiency and scope of the testimony adduced before him, although he did, frequently during the examination, object to the admission of certain evidence and to the scope and bearing thereof. We have not been informed as to the precise nature of the evidence objected to, and the record is the only source to which we can look for such information. For the reasons thus assigned the defendant, Wm. D. Ferguson, moved that the master’s report might be set aside, and he also moved at the same time that the interlocutory decree might be set aside and held for naught, which latter motions he urged for the following reasons: 1st. That at the same time of the Circuit Court and previous to the entry of said interlocutory decree in this cause, the said Frances, upon her own application, had been divorced from him, and that all the property, before that time in her hands and in his own as her husband, was decreed to her and actually was taken into her posses-’ sion and that said decree entirely changed the whole nature of the relation heretofore subsisting between tire said Frances and himself, that no mention thereof was made in said decree, but that it carried the presumption upon its face that said marriage was still in full force. 2d. That said decree was entered prematurely and without the requirements of the Statute in that behalf having been complied with, in this, to wit: that by law it is required that before the hearing of a chancery cause, or the entry of a decree therein, that each party shall distinctly set down the allegations made by him and denied by the other party, and that nothing of that sort had been done previous to the entry of the decree. 3d. That said decree was prematurely and improperly entered, because the cause had never been set down for hearing at a term thereof holden previous to the entry of said decree. 4th. That no term of the court had intervened between the time at which said decree was entered and the present, in consequence of a failure of a term in October, 1843, and that by reason thereof no opportunity had ever been presented to interpose a motion to set aside the said decree; and 5th. That because said decree is in other-respects uncertain, informal and improvidently entered, and manifestly tending to wrong, injure and oppress him; he therefore prayed that the same might be set aside and held for naught. The doctrine asserted here is that inasmuch as tire Circuit Court, upon the rendition of the decree divorcing the defendants, William D. Ferguson and his wife Frances, made an order by which all the property previously held by her and himself as her husband was decreed to her and actually taken into her possession, that therefore he ought not to be subjected to the payment of the distributive shares of the heirs of tire intestate. The order of the Circuit Court to which reference is made is supposed to be predicated upon the 13th section of the 51st chapter of the Revised Statutes. This section provides that “where a wife shall obtain a 'divorce from the bonds of matrimony, all property which came to the husband by means of the marriage and remained undisposed of at the time of filing the bill, shall revest in and revert to tire wife in her own" right absolute and to descend to the heirs of such wife, free from all encumbrance to be done by such husband. It is said in Toller on Executors that, “If a married woman be an executrix or administratrix, tiro husband has a joint interest with her in the effects of the deceased, such as devolves the whole administration upon him, and enables him to act in it to all purposes with or without her assent. In case of die husband’s death the interest never having been divested, shall survive to her; but if she die, it shall not survive to the husband, inasmuch as it belonged to him merely in her right as representative of the deceased.” And also “that if an executrix commit a devastavit and then marry, the husband, as well as the wife, is chargeable for it during the coverture.” It is considered clear from this authority that the liability of the husband of an executrix or administratrix for acts committed before the marriage, does not extend beyond the coverture. But die question here is how is the fact, that the coverture has ceased, to be brought before the court so as to exonerate the husband? It is admitted that the divorce was granted before the entry of the interlocutory decree, and that no steps were taken to bring the fact to the notice of the court until a subsequent term, and then only by a mere motion to set aside the decree. This matter could not be brought within the cognizance of the chancellor by a mere motion to set aside the decree, consequently there is no error in overruling the motion upon tiiat ground. It is alleged in the bill, and admitted in the answer of the defendants, that William Hulbert, senior, died intestate in the month of December, 1835, and that in a short time thereafter his widow, Frances Hulbert, was appointed administratrix of his estate. The administration was commenced under the territorial law, which is wholly silent as to the effect of the marriage of an administratrix, and consequently it is subject to the rules and principles of the common law. By the common law, if the wife be indebted before marriage, the husband is bound after- < wards to pay the debt, for he has adopted her and her circumstances together. Thus the husband’s responsibility extends by retrospection to debts contracted by his wife before their intermarriage. (Lit. 264 b.) By the conimon law, therefore, which was in full force in the month of March, 1836, the time of the intermarriage of the widow with the defendant, William D. Ferguson, her powers as such administratrix were not extinguished, but on the contrary, the whole administration with all its incidents, ipso facto, devolved directly upon him. True it is, that the 28th section of chap. 4, provides that “If any executrix or administratrix marry, her husband shall not thereby acquire any interest in the effects of the testator or intestate other than his wife’s part, nor shall the administration thereof devolve on him, but such marriage shall extinguish her powers, and her letters shall be revoked, and letters of administration with the will annexed de bonis non should be granted to such person as the court may deem most suitable.” This enactment was put into operation by the proclamation of the Governor, which was issued on the 20th day of March, A. D. 1839, and consequently cannot in any manner affect the powers or responsibilities which devolved upon William D. Ferguson by his intermarriage with tlie administratrix of the estate of William Hulbert, deceased. The 59th and 60th sections of chapter 23 of the Revised Code, provide that “within such time as the court shall by rale require, before the hearing of a cause at issue, each party shall distinctly set down the allegations made by him and denied by the other party, or which by the course of proceeding in chancery, he is bound to support by testimony, and issues shall be made up thereon;” and that “All causes shall be tried, heard and determined at the next term after the term they are set for hearing, or put at issue by replication, unless good cause be shown for a continuance; and at the hearing the testimony shall be confined to the issues made up as required in the preceding section.” According to these provisions of the statute, each party is required to set down distinctly the allegations made by him, and denied by the other, or which by the course of proceeding in chancery he is bound to support by testimony, within such time as the court shall by rule require, and the court is required to try, hear, and determine die cause at the next term after the term it is set for hearing, or put at issue by replication, unless good cause be shown for a continuance. It must be conceded that the Circuit Court acted irregularly in proceeding to the trial and determination of the cause without having first made a rule upon the parties to set down their respective allegations, yet this was a mere irregularity, and inasmuch as the cause was put at issue by replication, and the defendant failed to enter his exceptions at the time, it is too late to avail himself of it to set aside the decree, after he has appeared before the master and enjoyed all the benefits of á full investigation upon the merits. It was most clearly the duty of the Circuit Court to have made .a rule upon the parties, specifying a particular, time within which they should have been required to set down the allegations made by the one and denied by the other, and to have made up issues thereon, but it is too late to raise the objection upon the coming in of the master’s report. True it is, that die record does not show that the parties were present in court at the time the order of reference was made, but the legal principle is that they were, as they had made themselves parties to the suit by filing their answers to the bill exhibited against them. The replication to the answer of Mrs. Frances Ferguson was filed on the 20th of October, A. D. 1841, and the trial was had on the 19 th of April, 1843. This was the last replication filed in the cause, and consequently the cause maybe said at that time to have been put at issue by replication, and as such it cannot with propriety be objected that it was tried before the next term after the term it was' set for hearing or put at issue by replication. The second list of exceptions of William D. Ferguson, as they stand upon the transcript, from the first to the fourth inclusive, are entirely too general and indefinite to admit of discussion, and consequently will be passed without comment. The fifth, in substance is, that it no where appears either in the bill, answers, or evidence, that the defendant (William P. Ferguson) had any thing to do with the estate until about the 11th of November, A. D. 1839, and that notwithstanding this, he is charged in the report with the hire of several male servants belonging to the estate for the entire years of 1836, 7 and 8, in the sum of $5002 50, and for the same time with the hire of women servants in the additional sum of $2880 00, thus making in the aggregate for negro hire alone, and that too without interest, the sum of «$7882 50, which sum he insists he is not chargeable with, because the same relates entirely to matters which had transpired long before he had any thing to do with the estate, that the last mentioned sum amounts to almost as much as the whole sum claimed in the report, and that in addition to the before named sum, his predecessor is charged with the rent of the mansion house of her late husband, in the sum of $250 per annum for four years, making in the aggregate just $1000, and is also charged as interest on the sums so found against them in tiie sum of $3291 07, malting an entire aggregate of items erroneously charged of $12,173 57. The first branch of this exception is not supported by the evidence. It is admitted by Ferguson in his answer, that he intermarried with the widow of the intestate in the month of March, 1838, and that she had taken out letters of administration long anterior to said intermarriage. If the charge for negro hire be correct in the abstract, there can be no doubt of the liability of the defendant, Win. D. Ferguson, as by the marriage with the ad-ministratrix, he adopted her and her circumstances together-. The propriety of charging the widow with rents and profits of the homestead is the point next to be considered. The 21st sec. of the administration law, in Steel and McCampbell’s Digest, provides that “In all cases where there is a widow she shall be allowed to keep as her absolute property, her husband’s wearing apparel, her cards, wheels, looms, and all other implements of industry, all spun yam, also all the cloth and clothing made tip in the family by the said widow and family, for their own use, and all such property, goods, wares, and furniture as the said widow may think proper, not to exceed the appraised value of one hundred and fifty dollars; and the executor or administrator shall deliver to the widow the articles aforesaid, and take her receipt therefor; and the amount shall be allowed to such executor or administrator in his accounts; and such amount shall be deducted from the amount to which such widow may be entitled as dower in the personal estate of the deceased, if any remain to her after the payment of the just debts of the deceased.” The 4th section of the act of “descents and distributions contained in the same code’ ’ also declares that “the estates of persons dying intestate in this Territory shall descend and be distributed in the manner following, viz: if the intestate shall leave a widow and child, or children, the dower of such widow shall be one-third part of said estate, after all just demands against said estate are paid in the way prescribed in the act to which this is an amendment, with such other and further provisions as are hereafter provided by this act, and the remaining two-thirds to descend and be distributed to the said child or children as is hereafter provided by law.” And the 2i section of the dower act also provides that “every widow, after the death of her husband, may tarry in the mansion place of her husband and the plantation thereto belonging, rent free, until her dower shall be assigned to her.” It is contended that as the widow in this case was the guardian of the minor children of her deceased husband, it was her duty to have assigned her own dower, and that she should'not be allowed to enjoy the rents and profits of the homestead, and thereby to take advantage of her own wrong. It is not deemed material to decide whether she should have assigned her own dower or not, as it is shown by the evidence in the cause, that she did not appropriate the proceeds of the homestead to her own use and benefit, but that, on the contrary, she applied them to the payment of the debts of the intestate. Having thus applied the proceeds of the land, she most assuredly cannot be charged with the amount in favor of the heirs of the intestate. It is insisted in the eighth exception in addition to other points already adjudicated that the widow was entitled by law to keep and possess such number and amount of the slaves as would have been equal to her dower in that description of the property. Under the law as it then stood, the widow did not take her dower in the negroes by way of lien, nor was she entitled to have it reserved from the rest of the es- " tate, immediately upon the death of her husband, nor could her right be said to attach until the estate was fully and completely administered. The proceeds arising from the hire of all the slaves were assets in die hands of the administrator, for the payment of the debts, and consequently she had no right to retain any part of that fund as her individual property, before the time had elapsed for the presentation1 of claims against the estate, and a final settlement made with the proper court. It is not pretended that the amount charged for the hire of the negroes from die first of 1836, to die end of 1838, is exorbitant, 'but that it was improperly made against the defendant, William D. Ferguson, upon the ground that it accrued before his intermarriage with the administratrix. This, as has been already shown, can constitute no valid objection to his liability for the sum therein charged. The sixth exception" raises numerous points, all of which have already been disposed of, except that which relates to the cord-wood alleged to have been cut upon the land of the intestate. The master in his report, it is alleged, has charged the defendants with $1001 10 for corcl-\voocl; and they contend that he had no evidence whatever that any portion of the wood was cut or taken from the land of the intestate. It appears from the testimony that the cord-wood was cut upon the joint property of Hulbert and Martin, though this point is conceived to be wholly immaterial, as the administratrix exonerates herself by alleging in her answer that the proceeds, arising from the sales of cord-wood cut and sold upon the premises, were applied to the payment of the debts of the intestate. If she did not appropriate the proceeds to her own use, but applied them to the payment of the intestate’s debts, most unquestionably she cannot be again subjected in favor of the heirs. This portion of her answer is no where impeached by the testimony, and consequently must be regarded as true. From her own answer, which is not impeached by the testimony in the cause, she is clearly entitled to a credit for the proceeds of all the wood cut, from the death of the intestate up to the time of her intermarriage with William D. Ferguson. This is all the ground believed to be covered by her answer, and as such any waste committed by William D. Ferguson, subsequent to the marriage, would be properly chargeable to him. The seventh objection urged is, that the master charged the administrator five hundred and ninety-seven dollars, for the hire of negroes, and that too, whilst the same negroes were in the actual possession and under the control of Thomas M. Collins, one of the complainants. According to the answer of Ferguson, which is not contradicted by the testimony, it is manifest that Collins on the first day of December, 1838, obtained possession of four of the identical negroes, for whose services from ’36 to ’40 inclusive Ferguson stands charged. This seems to be tire inevitable conclusion from the answer of Ferguson, and the testimony of Underhill.’ The charge for negro hire against the administrator is therefore excessive, as a deduction should have been made equal to the sum found for the services of those negroes delivered over to Collins, and from the time of such delivery. The eighth objection is that the amount of the claim on the Land Office at Helena, of one hundred and fifty dollars, the one against Martin and Hulbert, of sixty-seven dollars and fifty-six cents, and the one-third of the one against Hulbert, Martin, and Reeder, of forty-one dollars and sixty-six cents, are erroneously charged, as upon' enquiry at the Land Office, the defendant was informed that no such claim existed at the time .or ever did exist, and that the other two claims are against persons who, if they reside in the State, cannot be found. This objection is not supported by the evidence, and we deem the testimony fully sufficient to fix the administrator’s liability for each Of the sums thus allowed. The next ground of objection is, that upon the testimony of Underhill, the master refused to allow the entire claim of Lawrence and Edmonds, amounting to five thousand four hundred and eighty-six dollars and eighty cents, which had been allowed by the Probate Court of the county, upon the testimony of said Underhill, and paid by the predecessor of the,defendant, and also the claim of Underhill for seventeen hundred and ninety-five dollars and thirty-seven cents, which was also paid by the said defendant. In respect to the claim of Lawrence and Edmonds, the testimony is clear and conclusive, and the deduction made by the master is fully sustained by it, but it is otherwise with that of Underhill himself. The major part of that claim seems to have been disallowed because it was incurred for services rendered upon the plantation of the intestate, sub"sequent to his death. This is certainly no good reason for disaEow-ing it, as it is shown by the answer of Mrs. Hulbert, that all the proceeds and profits arising in any manner from the estate, after reserving a reasonable support for the family, were applied to tire payment of the debts of the intestate. If the profits of the estate were not appropriated by the widow to her own use, but were applied to the payment of the debts due-from the estate, it is clear that she should not be charged for the labor necessary to produce those profits. The entire claim of Underhill should therefore have been allowed, as a charge upon the estate. The matters set up in the tenth specification, have already been virtually disposed of. The eleventh and last ground urged by the defendants, is, that the master deducted from the claim of James A. Hart, the sum of five hundred dollars, which they allege has been allowed by the Probate Court, and paid by them. It is contended that the demand of Hart, was for the purchase money of certain lands, that the administratrix paid it in her own wrong, as he was not able to make a complete and perfect title. It is stated that Collins expended .considerable money and labor in securing the title and that he is entitled to a deduction of five hundred dollars. There is no sufficient data from which it is practicable to draw any definite conclusion as to the value either of Collins’ services, or the amount of money expended; nor does it appear wherein the defect of title consisted. There is clearly no good ground shown for the deduction. This disposes of the several exceptions interposed by the defendant in the court below. The complainant also filed sundry exceptions which we will now proceed to consider. The first, they did not insist upon, but voluntarily withdrew it. The second is, that the master allowed one thousand and seventy-nine dollars to the defendant for moneys paid to James A. Hart as a consideration for land to which he had no tide; and, thirdly, that the hire of negro boy Alfred, and the accounts of Martin, Hulbert and Reader, and Martin and Hulbert, and also the sum of one hundred and fifty dollars in the Land Office, though allowed by the master, were not included in the report. These specifications have already been passed upon whilst discussing the exceptions filed by the defendants. Each of the claims having been correctly allowed, they should necessarily have been embraced in the report. They object, fourthly, to each and every charge allowed the guardian for the board and clothing of the several complainants upon tbe ground of extravagance and injustice. The guardian admits in her answer that she reserved a sufficiency out of the proceeds of the estate for the support of her family. If she reserved sufficient to support the minor children of her deceased husband she most assuredly can have no just ground to claim any thing whatever for their board and clothing. It is believed, therefore, that the guardian is not entitled to any allowance against the heirs for either board or clothing, as she admits that she retained a sufficiency of the estate for that purpose. The fifth, and last exception taken by the complainants, is that thirty cents per cord for wood was the whole sum allowed, when by the Statutes of the State the defendants, as trespassers, knowing that they had no authority to cut such wood, were liable to pay treble its value. It is a settled rule in equity that he who seeks it must be prepared to do it to others. If the defendants- had committed waste by cutting the timber for the purposes of speculation, and had appropriated the proceeds to their own use, the law in that case would have sanctioned exemplary damages, but such consequences should not be visited upon persons who act thus in good faith and in order to prevent a sacrifice of the property of the estate. It would be unjust in the extreme under the circumstances of this case to charge the defendants more than the actual value of the timber, as it is abundantly proved that the proceeds were applied to the payment of the debts of the deceased. ■ There is no error therefore in this respect. It is clear, therefore, that there are numerous errors in the master’s report, and that the same should not have been received and approved by the Circuit Court. It is, therefore, ordered, adjudged and decreed, that the decree of the Crittenden Circuit Court herein rendered, be, and the same is, for the errors aforesaid, reversed, annulled and set aside with costs; and it is further ordered, that this cause be remanded to said Circuit Court to be proceeded in according to law and not inconsistent with this opinion.